The CITY OF MONT BELVIEU,
Appellant

v.

ENTERPRISE PRODUCTS
OPERATING, LP,
Appellee.

No. 14–05–01197–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 27, 2007.

Ramon G. Viada, III, J. Grady Randle, Houston, for Appellant.

Harry Paul Susman, Thomas W. Paterson, Carolyn Paige Courville, Houston, for Appellee.

Panel consists of Justices FOWLER, FROST and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this land use dispute, the City of Mont Belvieu (the "City") appeals from an order granting a plea to the jurisdiction in favor of Enterprise Products Operating, LP ("Enterprise"). In four issues, the City contends the trial court erred by dismissing the City's suit for want of jurisdiction because (1) preemption is an affirma-

---

1. Nothing in our record indicates whether the City was aware of or participated in the permitting process for this particular well.

2. According to the City's original petition, Enterprise initially declined to secure a permit before drilling, but subsequently submitted an

tive defense, not a jurisdictional bar, (2) Enterprise failed to establish that the City's ordinances were preempted by certain provisions of the Texas Natural Resources Code (the "code"), (3) the code does not divest a district court of jurisdiction to hear a municipality's action to enjoin a public nuisance, and (4) the code does not preempt the common law duty of landowners to keep their premises from becoming public nuisances. We reverse the trial court's order granting the plea to the jurisdiction and remand for further proceedings.

## I. BACKGROUND

The Barbers Hill salt dome, located beneath the City, contains numerous caverns created and used by the oil and gas industry as storage reservoirs for natural gas liquids and other hydrocarbon products. On January 31, 2005, the Texas Railroad Commission ("TRRC") granted Enterprise a permit to "create, operate and maintain an underground hydrocarbon storage facility" after a lengthy process in which the City participated. On February 9, 2005, TRRC issued a permit authorizing Enterprise to drill a well to access the storage facility.[1] Enterprise began work prerequisite to drilling this well during August 2005.

When the City was informed that Enterprise was operating a drilling rig within city limits, it notified Enterprise of its permitting requirements. Because Enterprise did not secure a permit, the City subsequently issued a "cease and desist" letter to Enterprise, but Enterprise continued to drill.[2] The City then filed suit

---

application. However, at that time, Enterprise had failed to secure any waivers to reduce the drilling limitation set-offs required by the City's ordinances. Thus, the City had not granted the permit, but was still process-

against Enterprise, alleging that (1) Enterprise had violated city ordinances relating to drilling without a permit, distance requirements, and zoning; and (2) the drilling activity was a nuisance. The City sought temporary and permanent injunctions, as well as damages, interest and costs. In response, Enterprise filed a general denial, several affirmative defenses, and a plea to the jurisdiction. In its plea to the jurisdiction, Enterprise alleged that the City was not entitled to the relief it requested because the trial court lacked subject matter jurisdiction to grant an injunction overturning TRRC's decision to permit the same activities the City sought to enjoin. Enterprise also argued the Legislature intended that TRRC, not municipalities, control salt dome hydrocarbon storage facilities. After a hearing on October 31, 2005, the trial court granted Enterprise's plea to the jurisdiction. This appeal followed.

## II. JURISDICTION OF THE TRIAL COURT

In four issues, the City contends the district court erred in dismissing its suit for lack of subject matter jurisdiction because: (1) the "preemption" argument asserted by Enterprise in its plea to the jurisdiction operates as an affirmative defense rather than a jurisdictional bar; (2) Enterprise failed to establish as a matter of law that section 211.002(b) of the code preempts the City's ordinances; (3) Chapter 211 of the code does not divest the district court of jurisdiction to entertain a municipality's action to enjoin a public nuisance; and (4) Chapter 211 of the code does not preempt the common law duty of

landowners to keep their premises from becoming a public nuisance.

 In a plea to the jurisdiction, a party challenges the trial court's authority to determine the subject matter of the cause of action. *Mulvey v. Mobil Producing Tex. & N.M.*, 147 S.W.3d 594, 600 (Tex.App.-Corpus Christi 2004, pet. denied); *Tex. Parks & Wildlife Dep't. v. Garrett Place, Inc.*, 972 S.W.2d 140, 142 (Tex.App.-Dallas 1998, no pet.). Because subject matter jurisdiction is a question of law, we review the trial court's decision *de novo*. *Mulvey*, 147 S.W.3d at 600. In deciding a plea to the jurisdiction, we may not weigh the merits of the claim, but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex.2000). When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). To prevail, the party asserting the plea must show that, even if all the allegations in the plaintiff's pleadings are taken as true, an incurable jurisdictional defect appears on the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Mulvey*, 147 S.W.3d at 600.

### A. Waiver/Preservation of Error

As a preliminary matter, Enterprise insists that we may not review this matter because it never asserted a preemption argument in the trial court.[3] Enterprise

---

ing Enterprise's application, when it issued its "cease and desist" letter.

**3.** Enterprise contends that it is not similarly limited to matters raised in the court below, citing *Lucey v. Southeast Tex. Emergency Phy-*

*sicians Assoc.*, 802 S.W.2d 300, 304 (Tex. App.-El Paso 1990, writ denied). However, *Lucey* is easily distinguishable because it addressed an appellee's right to bring new matters on appeal in a case after a judgment *non obstante veredicto*, a situation in which an

also argues that we may not reverse the trial court's judgment because the City has failed to challenge every jurisdictional ground asserted in Enterprise's plea.

■ "[T]he review of an order sustaining a plea to the jurisdiction and dismissing the case is limited to the matters actually presented to the trial court." *Gadison v. Economy Mud Products, Inc.*, 964 S.W.2d 652, 654 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). In an appeal of a jurisdictional plea, an appellant must attack "all independent bases or grounds that fully support a complained-of ruling or judgment." *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.-Houston [1st Dist.] 2002, no pet.).

Enterprise's plea to the jurisdiction set forth two bases for a lack of subject matter jurisdiction: (1) the trial court may not entertain a request to enjoin operations at a salt dome storage facility that TRRC permitted; and (2) the Legislature intended that TRRC, not municipalities, control salt dome hydrocarbon storage facilities. In its plea and argument before the trial court, Enterprise sought to establish that the Legislature "limited" a municipality's authority to regulate salt dome storage facilities. Enterprise stated in its plea, "[T]he sole issue is whether the drilling activity at issue is properly authorized after the TRRC has granted the requested permit, or whether the City can require its own permit with standards that flatly differ from those that TRRC has established." On appeal, Enterprise contends that an appropriate framing of the issue presented in its jurisdictional plea is: "Did the trial court err in dismissing the City's petition for lack of jurisdiction when the City had participated in [TRRC] proceed-

ings deciding these issues, and the issues were entirely within the purview of [TRRC]?"

■ First, we note that contrary to Enterprise's contentions, the City has not contested the validity of the TRRC permits. Instead, in the City's pleadings, which we must construe in its favor, it alleges that (1) Enterprise has violated the City's ordinances by failing to obtain the proper City permit, and (2) Enterprise's drilling activities are a nuisance. Indeed, the City states in the argument section of its brief,

> The City's suit is plainly not a collateral attack. The City has no quarrel with the validity of [the TRRC] permit, and does not seek either to overturn or contradict it. What the City seeks to do is enforce its own ordinances that impose *additional* requirements beyond the scope of [TRRC]'s regulatory authority to ensure the safety of Enterprise's well.

(citations omitted). Labeling the City's lawsuit as a collateral attack on TRRC's permitting process does not properly construe the City's pleadings in its favor. Thus, the trial court erred if it based its jurisdictional determination on the notion that the City's lawsuit is an impermissible collateral attack.

■ Second, admittedly, neither party used the term "preemption" in the trial court to describe Enterprise's grounds for its plea. However, Enterprise's contention that the Legislature intended TRRC, and not municipalities, control salt dome hydrocarbon storage facilities can hardly be classified as anything but a preemption issue.[4] Moreover, because district courts

appellee is permitted by the rules of civil procedure to bring forward cross-points in support of the judgment. *Id.*

4. Enterprise employed the following statement as a subheading in the argument section of its plea: "The Legislature intended that the

are courts of general jurisdiction and generally have subject matter jurisdiction absent a showing to the contrary,[5] Enterprise's arguments necessarily rest on a determination that the Legislature's grant of regulatory authority to TRRC divested the court of jurisdiction to consider the City's claims because it deprived the City of any authority to regulate salt dome storage facilities. Regardless of the actual words employed, Enterprise clearly sought to establish that the City's permitting process was subsumed or limited by—*i.e.,* *preempted by*—TRRC's permitting process. Accordingly, we conclude that the City's arguments on appeal adequately encompass the grounds for Enterprise's plea to the jurisdiction. *See, e.g., El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 316 (Tex.1999) (noting that issues should be liberally construed to "obtain a just, fair, and equitable adjudication of the rights of the litigants"); *Tex. Mexican Ry. Co. v. Bouchet,* 963 S.W.2d 52, 54 (Tex.1998) ("A point of error is sufficient if it directs the attention of the appellate court to the error about which complaint is made.") (citation omitted, internal quotations omitted).

## B. Preemption

In its first issue, the City asserts that the trial court improperly conflated the issues of subject matter jurisdiction and preemption, which are distinct inquiries. The City contends that, while preemption may operate as an affirmative defense to some of its claims, it does not deprive the trial court of jurisdiction over them. We agree.

■ An ordinance or charter provision that attempts to regulate a subject matter preempted by state statute is unenforceable to the extent it conflicts with that statute. *See In re Sanchez,* 81 S.W.3d 794, 796 (Tex.2002); *see also Austin Police Ass'n v. City of Austin,* 71 S.W.3d 885, 888 (Tex.App.-Austin 2002, no pet.). Simply because the legislature has enacted a law addressing a subject matter does not mean the legislature has completely preempted the subject matter. *City of Houston v. Todd,* 41 S.W.3d 289, 295 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). For a state statute to preempt a subject matter usually encompassed by municipal authority, the statute must do so with unmistakable clarity. *City of Freeport v. Vandergrifft,* 26 S.W.3d 680, 681 (Tex.App.-Corpus Christi 2000, pet. denied).

■ Ordinarily, a plea to the jurisdiction is not the proper vehicle for resolving preemption issues because preemption operates as an affirmative defense. *Cf. Harrill v. A.J.'s Wrecker Serv., Inc.,* 27 S.W.3d 191, 195 n. 1 (Tex.App.-Dallas 2000, pet. dism'd w.o.j.) (noting that a defendant's plea to the jurisdiction based on federal preemption did not warrant dismissal of plaintiff's complaint, where plaintiff pleaded sufficient facts to establish his cause of action under state transportation code). Nonetheless, Enterprise contends that a plea to the jurisdiction was proper in this instance because the issue here is one of forum preemption rather than "choice of law" preemption. *See Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 545–46 (Tex.1991) (distinguishing between forum preemption, which implicates a court's subject matter jurisdiction, and "choice of law" preemption, which instead operates as an affirmative defense and does not impact subject matter jurisdiction).

TRRC, not municipalities, control salt dome hydrocarbon storage facilities."

5. *See* Tex. Const. art. V, § 8; *see also In re Entergy Corp.,* 142 S.W.3d 316, 322 (Tex. 2004).

■ However, in this case, forum preemption does not apply because the Legislature has not given TRRC exclusive authority over salt dome facilities. Several parts of Chapter 211 of the code signal the Legislature's intent that the TRRC not have exclusive jurisdiction over everything related to salt dome facilities.

First, TRRC's authority over salt dome storage facilities derives from section 211.011 of the code, which provides: "[TRRC] has jurisdiction over all salt dome storage of hazardous liquids and over salt dome storage facilities used for the storage of hazardous liquids." TEX. NAT. RES.CODE ANN. § 211.011(Vernon 2001). Subsection 211.011 does not state that it confers "exclusive" jurisdiction on TRRC; it merely gives TRRC "jurisdiction." *See id.*[6]

Second, Chapter 211 of the code also contains the following provisions, which specifically preserve a municipality's authority even in spite of Chapter 211's reservation of powers to TRRC:

(a) This chapter does not reduce, limit, or impair the authority provided by law to any municipality, except as provided by Subsection (b) of this section.

(b) A municipality or county may not adopt or enforce an ordinance or other regulation that establishes safety standards or practices applicable to hazardous liquid salt formation storage facilities that are subject to regulation by federal or state law.

(c) "Safety standards or practices" means any regulation of an activity or facility covered by this chapter or that is incompatible with the safety standards or practices enacted or adopted by federal or state government pursuant to the Hazardous Liquid Pipeline Safety Act of 1979, as amended.

TEX. NAT. RES.CODE ANN. § 211.002 (Vernon 2001). Under these provisions, the Legislature did not intend to fully preempt a municipality's authority in this area. But, if we were to adopt Enterprise's position, we would have to ignore sections 211.002(a) and (b) and they would serve no purpose in the chapter.

Third, the phrase "safety standards or practices" has a specific meaning in Chapter 211. That meaning does not include all actions a municipality might take regarding a salt dome or even all matters related to safety. Section 211.012 requires the Commission to adopt safety standards and practices for salt dome storage of hazardous liquids via rules. The rules are to cover specific areas such as

- installation and testing of safety devices at the facilities;
- emergency notification procedures;
- fire prevention and response procedures;
- safety training for employees/workers on the operation of the facility; and
- other requirements regarding safe construction, operation and maintenance of facilities.

TEX. NAT. RES.CODE ANN. § 211.012(Vernon 2001). Thus, "safety standards and practices" is limited to these specifically listed areas.[7] *See id.*

---

6. *Cf. In re Entergy Corp.,* 142 S.W.3d at 322–23 ("An agency has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute.").

7. *See In re Entergy Corp.,* 142 S.W.3d at 322 (noting that an administrative agency "may exercise only those powers the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the Legislative has expressly placed with the agency").

Accordingly, this case does not present an issue of forum preemption, but instead a question of choice of law preemption, which does not operate as a jurisdictional bar to the City's claims. The trial court therefore has jurisdiction to determine whether, and to what extent, the ordinances at issue are preempted by the Legislature's grant of regulatory authority to TRRC, and thus whether the City is entitled to the relief it sought.

### III. CONCLUSION

Because the trial court erred by disposing of the City's claims in a plea to the jurisdiction, we sustain the City's first issue. We will not consider the City's remaining issues because they relate to a preemption argument not properly resolved in such a plea. Further, we discern no other incurable jurisdictional defects apparent from the face of the City's pleadings. Accordingly, we reverse the trial court's order granting the plea to the jurisdiction and remand this case for proceedings consistent with this opinion.